IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HIITT CONTRACTING, INC., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 8:20-cv-2880-PX |
| HARTFORD FIRE INSURANCE CO., *et al.*, | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Pending before the Court are motions to dismiss or stay this action filed by Hartford Fire Insurance Company ("Hartford"), Pacific Insurance Company, Limited ("Pacific"), and XL Insurance America, Inc. ("XL") (ECF Nos. 22 & 25); and motions to dismiss filed by CJ Miller, LLC ("CJ Miller") (ECF No. 29), and by St. Paul Fire and Marine Insurance Company ("St. Paul") (ECF No. 35). The motions have been fully briefed, and after a hearing that took place on May 27, 2021, the Court is prepared to rule on the motions. *See* Loc. R. 105.6. For the following reasons, the Court DENIES St. Paul's motion (ECF No. 35); GRANTS Hartford, Pacific, and XL's motions to stay (ECF No. 22 & 25); STAYS this action pending the completion of the parallel proceedings in Virginia; and will HOLD IN ABEYANCE CJ Miller's motion (ECF No. 29).

**I.   Background**

    **A.   *HITT v. Glenstone* underlying litigation**

This insurance coverage action stems from a construction project gone awry. Currently also pending before this Court are the breach of contract claims and counterclaims that HITT Contracting, Inc. ("HITT") and Glenstone Foundation Inc. ("Glenstone"), the owner of the

Glenstone Museum in Potomac, Maryland, are pursuing against each other.  *See HITT v. Glenstone*, PX-18-2691, ECF Nos. 19 & 86 (hereinafter *HITT v. Glenstone* or the "underlying action").  In 2011, Glenstone embarked on an ambitious $200-million expansion of its museum.  ECF No. 4 ¶ 14 ("the Project").  Dissatisfied with the original primary contractor, Glenstone hired HITT in December 2014 to take over as the general contractor in charge of managing the Project.  *Id.* ¶¶ 15–16; *see also HITT v. Glenstone*, ECF No. 74-1 ¶¶ 2–5.  HITT assumed responsibility for overseeing every aspect of the Project, including the work performed by its subcontractors CJ Miller, Prospect, and Enclosure, among others.  ECF No. 4 ¶¶ 16–17.

Shortly after HITT took over the Project, its relationship with Glenstone started to falter.  *See HITT v. Glenstone*, ECF No. 74-1 ¶ 6.  Project deadlines were pushed back, costs ballooned, and each blamed the other for missed deadlines and broken promises.  *See id.*, ECF No. 19 at 20; ECF No. 74-1 ¶¶ 7–10, 16–19.  By June 2018, HITT notified Glenstone that it had achieved substantial completion of the Project and that Glenstone was improperly withholding final payments owed to HITT in breach of their contract.  *See id.*, ECF No. 74-1 ¶¶ 113–15, 135.  Glenstone, in turn, contested that the Project was anywhere near substantial completion and volleyed to HITT a litany of counternotices for incomplete and shoddy work involving almost every aspect of the Project.  *See id.*, ECF No. 19 ¶¶ 171–73, 181, 203–05.

In August 2018, HITT filed suit against Glenstone for breach of contract, claiming Glenstone had interfered with its ability to timely complete the project and wrongly withheld amounts due.  *See id.*, ECF No 1.  HITT seeks at least $18 million dollars in damages.  *See id.*, ECF No. 74-1 at 27–28.  Glenstone countersued, contending that HITT's breaches have cost it more than $70 million in damages.  *See id.*, ECF No. 19 at 86; ECF No. 4 ¶ 21.  This Court recently denied the parties' cross motions for summary judgment in this action on all but one of

2

the claims.[1]

## B. HITT's Insurance Coverage Related to the Glenstone Project

As part of its obligations under the contract with Glenstone, HITT obtained several layers of insurance from the Defendant carriers. ECF No. 4 at 6–14. From Hartford, HITT obtained general liability coverage issued as part of a Contractor Controlled Insurance Program ("CCIP Policy" or "Hartford Policy"), for the period between February 28, 2014 and July 1, 2018. *Id.* ¶ 23; ECF No. 22-9. The CCIP Policy insures HITT as the first "named insured" and its subcontractors also as "insureds" for up to $4,000,000 in "property damage" caused by an "occurrence."[2] ECF No. 4 ¶¶ 26–27; ECF No. 22-9 at 1, 7, 51. The policy also obligates Hartford to defend an insured against any covered claim. ECF No. 22-9 at 7.

XL issued for the Project the first layer of excess coverage ("XL Policy") for the same policy period, essentially augmenting the CCIP Policy limits by $25 million, and triggering a similar duty to defend. ECF No. 4 ¶¶ 41–46; ECF No. 22-10. St. Paul issued a second excess liability policy for an additional $25 million dollars under like terms. ECF No. 4 ¶¶ 57–70; ECF No. 22-11. Lastly, HITT obtained from Pacific "professional liability" coverage of $5 million for "professional incidents" arising between March 1, 2018 and March 1, 2019, as well as for losses in excess of amounts recovered from any subcontractor's design professional insurance. ECF No. 4 ¶¶ 71–77; ECF No. 22-12 at 1.

---

[1] The Court entered summary judgment in Glenstone's favor as to Count VI of its counterclaim, finding HITT breached its contractual duty to defend and indemnify Glenstone against lien claims filed by various subcontractors in the Circuit Court for Montgomery County, Maryland. *See HITT v. Glenstone*, ECF No. 19 at 84–86; ECF No. 94; ECF No. 230. The Court granted declaratory relief but denied Glenstone's request for injunctive relief. ECF No. 230.

[2] The CCIP Policy exempts from coverage, among other things: (1) property damage arising from an insured's work and included in the "products-completed operations hazard" unless the "damaged work … was performed on [HITT's] behalf by a subcontractor"; and (2) "property damage" to "impaired property" that is not "physically injured" if the damage arises out of "delay or failure" by the insured "to perform a contract … in accordance with its terms." ECF No. 22-9 at 10, 23, 73.

3

After Glenstone filed its counterclaims, HITT put each carrier on notice of the potential claims triggering coverage. ECF No. 4 ¶ 22. Hartford agreed to defend the claims but issued a reservation of rights on whether HITT had provided timely notice, whether the claims were subject to policy exclusions, and whether Hartford was obligated to pay pre-tender defense costs under the policy. *Id.* ¶¶ 36–37. XL, for its part, agreed to defend on August 21, 2020, but also under a full reservation of rights. *Id.* ¶¶ 53–54. St. Paul has acknowledged receipt of HITT's request but, to date, has not confirmed or denied coverage. *Id.* ¶ 68. Pacific, meanwhile, recently informed HITT that its claims remain under investigation. *Id.* ¶ 75.

### C. Virginia and Maryland Litigation

On August 21, 2020, three of the four Defendants in this case—Hartford, Pacific, and XL—went on the offensive and filed suit against HITT in the Circuit Court for Fairfax County, Virginia ("Virginia court"), seeking a declaration as to whether the Glenstone counterclaims are covered under the respective CCIP and excess policies. ECF Nos. 22-3 & 22-4. Hartford and Pacific pursued their litigation jointly, while XL filed separate claims. The cases have since been consolidated in the Virginia court. ECF No. 22 at 2 n.3.

Notably, on the same day that Hartford served HITT with the summons and Complaint for the Virginia action—September 9, 2020—HITT filed its claim for declaratory relief against the Defendants in Montgomery County Circuit Court. ECF No. 24-7 at 2; ECF No. 22-6 at 3. Simply stated, HITT's claims constitute the mirror image of the Virginia action in that HITT seeks a judicial declaration that each must defend and indemnify HITT in accordance with the primary and excess policy limits. *Compare* ECF No. 4 *with* ECF Nos. 22-3 & 22-4. HITT has also joined three project-subcontractors as interested parties: CJ Miller, Prospect, and NEC. ECF No. 4; ECF No. 29-1 at 3.

HITT next urged the Virginia court to either dismiss, or alternatively stay, the Virginia case in light of the pending Maryland litigation. ECF Nos. 22-6 & 22-7. HITT argued to that court that the insurers' suit should be regarded as a "strategic-preemptive tactic" designed to thwart HITT's litigation in its chosen Maryland forum. ECF No. 22-6 at 6. HITT further urged that dismissal in Virginia was warranted because its claims triggering coverage "center on events and property" in Maryland, and so a Maryland court should decide them. *Id.* at 1. The Virginia court has since denied HITT's motion, and the case is proceeding apace. ECF Nos. 49 & 49-1. According to the parties' latest proffer, HITT has countersued but has not joined the subcontractors or St. Paul in the Virginia action, and while no formal scheduling order has issued, the parties have started exchanging discovery. ECF No. 55.

Meanwhile, in the Maryland action, Hartford, Pacific, and XL noted timely removal to this Court on October 6, 2020. ECF No. 1. They now move to dismiss or stay this case pending the completion of the Virginia action. ECF Nos. 22 & 25. St. Paul and CJ Miller seek dismissal on separate grounds. ECF Nos. 29 & 35.[3]

**II.     Hartford, Pacific, and XL's Motions to Dismiss (ECF Nos. 22 & 25)**

Hartford, Pacific, and XL request that this Court dismiss this action under the "first-to-file" rule, or alternatively stay this case pending resolution of the Virginia action. ECF No. 22 at 1; ECF No. 25. Although the Court finds that the first-to-file rule is a poor fit for this matter, it will stay the case to avoid duplicative litigation and potential inconsistent decisions.

The first-to-file rule generally gives priority to the first action filed, here the Virginia action, "absent the showing of balance of convenience in favor of the second action." *Intellor Group, Inc. v. Cicero*, No. TDC-19-0010, 2019 WL 1643549, at *3 (D. Md. Apr. 16, 2019)

---

[3] The Court suspended the deadline for Prospect and NEC to respond or answer the Complaint at their request until the resolution of the pending motions. ECF Nos. 50 & 51.

5

(quoting *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974)).  But as HITT rightly points out, the first-to-file rule only applies to two competing federal actions, not when a *state* proceeding is involved.  *See* ECF No. 24 at 4 n.5; *Allied-General Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n.1 (4th Cir. 1982) ("Ordinarily, when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed."); *Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 665 (D. Md. 2011) ("The first-to-file rule refers to the doctrine that when the same party or parties have filed similar litigation in separate federal fora, the matter that was filed first should proceed, and the later-filed action should be stayed, transferred, or enjoined."); *Intellor Group*, 2019 WL 1643549, at *3 (discussing rule only in the context of competing federal actions).

Rather, where state court parallel proceedings are involved, the court must consider principles of "federalism, efficiency, and comity" when balancing the pertinent state and federal interests.  *United Capitol Insurance Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (quotation omitted).  Courts in this Circuit are guided by the four factors set forth in *Kapiloff*.  *Id.* at 493–94; *see also VRCompliance LLC v. HomeAway, Inc.*, 715 F.3d 570, 573 (4th Cir. 2013) (affirming use of *Kapiloff* factors in federal declaratory actions with parallel state proceeding); *cf. Wilton v. Seven Falls, Co.*, 515 U.S. 277, 286 (1995) (explaining the "exceptional circumstances" test for abstention does not extend to federal declaratory actions).  Per *Kapiloff*, courts consider:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of 'overlapping issues of fact or law' might create unnecessary 'entanglement' between the state and federal courts; and (4) whether the federal action is mere 'procedural fencing,' in

the sense that the action is merely the product of forum-shopping.

155 F.3d at 493–94 (citation omitted).

Each of the four factors support this Court staying the case. First, Virginia has a strong interest in "having its courts … resolv[e]" the scope of coverage available to HITT as a Virginia citizen and under the CCIP and excess policies. *VRCompliance*, 715 F.3d at 574. And Virginia law will likely decide that issue. *See id.* at 573–74. That is because, under Maryland choice-of-law rules, this Court must apply the law of the state where the contract was formed; for an insurance policy, the contract is formed where the policy is delivered and the premiums are paid, as the last acts necessary to "give the contract a binding effect."[4] *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161 (2012) (quotation omitted).

Here, neither event occurred in Maryland. Rather, the policies reflect that each took effect in Virginia. Each of the policies states that HITT, headquartered in Virginia, is responsible for paying the premiums as the "first named insured." ECF No. 22-9 at 66; *see also* ECF 22-10 at 11 (HITT as first named insured responsible for paying the premiums); ECF No. 22-11 at 11 (same); ECF No. 22-12 at 5. Additionally, each policy expressly lists HITT's mailing address as located in Falls Church, Virginia. ECF No. 22-9 at 34; ECF No. 22-10 at 1; ECF No. 22-11 at 2; ECF No. 22-12 at 1. While HITT attempts to muddy the waters by claiming the policies were delivered to its insurance broker in Washington D.C. (ECF No. 24-1 at 3), the Court finds it equally if not more likely they were also delivered to HITT's headquarters. The record strongly indicates that Virginia substantive law will apply to this declaratory judgment

---

[4] Virginia choice-of-law rules also apply the law of the state where the contract was formed. *See, e.g.*, *Eerie Ins. Exch. V. EPC MD 15, LLC*, 297 Va. 21, 28 n.5 (2019); *Black v. Powers*, 48 Va. App. 113, 126–27 (2006).

action.[5] Even more clear is that the Court cannot see how Maryland substantive law applies.[6] Thus, this factor weighs in favor of allowing the Virginia court to decide questions involving substantive Virginia law.

As to the second *Kapiloff* factor, the relative efficiencies of proceeding in the state versus federal forum, this factor generally affords priority to the first suit filed "absent the showing of balance of convenience in favor of the second action." *VRCompliance*, 715 F.3d at 574 (quotation omitted). Although the state and federal actions were filed close in time, Virginia is undoubtedly closer to resolution. The parties have litigated dismissal motions, which were denied, and the parties have already started exchanging discovery. *See* ECF Nos. 48 & 55. Because the Virginia action has clearly "progressed further," this Court cannot decide the case any more quickly or efficiently than the Virginia court. *VRCompliance*, 715 F.3d at 574.

As to the third factor, if these actions proceed simultaneously, entanglement is inevitable. The two actions overlap almost entirely. They both concern centrally whether HITT provided proper notice to trigger coverage and if so, whether the Project-related claims arising from the Glenstone litigation are covered under the Policies, triggering coverage and a duty to defend.

---

[5] That the XL, St. Paul, and Pacific policies contain Virginia endorsements further supports this Court's choice-of-law analysis. *See* ECF No. 22-10 at 13; ECF No. 22-11 at 8; ECF No. 24-6 at 51.

[6] HITT's reliance on the renvoi doctrine under Maryland choice-of-law rules—which HITT invoked at the eleventh hour after briefing was already submitted (ECF No. 55)—does not change this Court's choice-of-law analysis or the analysis under *Kapiloff*. Even assuming renvoi applies here (*see TIG*, 209 Md. App. at 162; *Griffith Energy Servs., Inc v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 224 Md. App. 252, 274–75 (2015)), HITT would need to establish Maryland has the "most substantial relationship" to the insurance policies or that Virginia courts would apply Maryland law. *See Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 579 (1995). HITT has shown neither. HITT cites one Virginia case for the proposition that Virginia courts may disregard *lex loci contractus* if the parties "intend[ed] for the contracts to be performed in another, specific jurisdiction." ECF No. 55 at 1 (quoting *Black v. Powers*, 48 Va. App. 113, 129 (2006)). HITT cites this rule without providing any analysis for the present action. Left to fill in the gaps of HITT's eleventh-hour argument, the Court believes HITT is conflating the underlying contract between HITT and Glenstone—to renovate the museum in Maryland—with HITT's contractual agreement with its insurers. The "performance" contemplated in the insurance policies includes HITT's compliance with the relevant terms and conditions and the insurers' resultant obligation to defend and indemnify HITT and other insureds. Thus, on these facts, it is far from clear that a Virginia could would disregard the default rule of *lex loci contractus* and instead apply Maryland law.

*Compare* ECF No. 4 *with* ECF Nos. 22-3 & 22-4.  HITT tries mightily to concoct differences between the two cases, adding the second excess carrier St. Paul as a defendant and three subcontractors as interested parties in this litigation.  *See* ECF No. 4.  But the presence of these additional parties does not, at all, change the nature of the relief sought—to ascertain whether the insurers received proper and timely notice of the claims and whether the claims are covered under the policies.  Because this action and the Virginia action are the same in all material respects, allowing both to proceed would certainly risk duplicative and potentially inconsistent judgments.  Accordingly, this third factor strongly counsels in favor of staying this matter and awaiting final resolution in the Virginia case.

Applying the fourth factor here is fairly straightforward.  *See Kapiloff*, 155 F.3d at 493–94.  The Court finds no basis to conclude that Maryland law applies to this action or that Maryland appears the better forum for this dispute.  Rather, HITT seems most concerned that the Virginia court will apply Virginia law and reject HITT's request for pretender defense costs.  ECF No. 24 at 10 n.9.  HITT's efforts to proceed here—presumably in the hope that this Court will apply Maryland law regardless of what the choice-of-law rules dictate—is paradigmatic forum-shopping.  In sum, all four *Kapiloff* factors favor staying this matter.  155 F.3d at 493–94.

Alternatively, even if the Court applied the first-to-file rule, the outcome would be the same.  The Virginia action was filed first, and contrary to HITT's urging, nothing suggests the insurers filed suit in reaction to HITT's having threatened litigation first.  *See Intellor Group*, 2019 WL 1643549, at *4.  The actions are identical in terms of the relief sought.  The fact there are additional parties in this action does not alter the need to avoid inconsistent judgments and discourage forum shopping.  Under this standard too, the Court would have deferred to the Virginia state proceeding.

Lastly, the Court exercises its discretion to stay the case versus dismissing it outright. *See* ECF No. 22-1 at 1. For whatever reason, the subcontractors and St. Paul have not sought to participate in the Virginia litigation, even though practically and legally they may very well be bound by that court's determination in the end. *See* ECF No. 55. Certainly, the Virginia litigation will have preclusive effect in this action, even if the precise scope of such preclusion will be left for another day. *See Lane v. Bayview Loan Servicing, LLC*, 297 Va. 645, 655–56 (2019). Given the additional parties in this action, the most prudent course is to stay this case entirely pending the resolution of the matter in Virginia.

Although the insurers seek dismissal outright, a stay will fairly address their concerns and avoid duplicative litigation. Further, it leaves open the possibility that HITT may litigate its claims against St. Paul in this forum, should St. Paul, for whatever reason, not join the Virginia action. Thus, a stay pending completion of the Virginia case is the proper course of action.

**III.    St. Paul's Motion to Dismiss (ECF No. 35)**

St. Paul asks to be dismissed from this suit because, as the provider of the second excess policy, its coverage obligation depends not only on HITT losing the underlying action, but also on HITT exhausting the policy limits of the Hartford and XL policies. ECF No. 35 at 8–9. Additionally, St. Paul distinguishes its policy because it does not include any duty to defend the underlying claims. *Id.* The Court finds St. Paul's arguments for dismissal wanting.

As a preliminary matter, the Court must clarify the applicable law. St. Paul relies, incorrectly, on Maryland substantive law as applied to declaratory judgment actions related to insurance coverage. ECF No. 35-1 at 9 (discussing *Home Exterminating Co., Inc. v. Zurich-American Ins. Grp.*, 921 F. Supp. 318, 325 (1996)). Federal courts sitting in diversity apply federal procedural law and state substantive law. *Hartford Fire Ins. Co. v. Harlesville Mut. Ins.*

*Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013).  Thus, "[a] state court declaratory action that is removed is treated as invoking the Federal Declaratory Judgment Act," not the Maryland Uniform Declaratory Judgment Act.  *Id.*; *see also Jones v. Sears Roebuck*, 301 Fed. Appx. 276, 281 n.12 (4th Cir. 2008) (same); *White v. National Union Fire Ins. Co.*, 913 F.2d 165, 167 (4th Cir. 1990) (same).

The Federal Declaratory Judgment Act provides that "[i]n a case of actual controversy ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  A court may afford such relief if two requirements are satisfied.  First, the dispute must present an adequate case or controversy "within the confines of Article III of the United States Constitution."  *White*, 913 F.2d at 167.  This constitutional precondition is met when the case involves parties "having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* at 168 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  Second, the court must conclude that, prudentially, the case ought be decided under the particular circumstances by ascertaining whether the requested relief will (1) will serve a useful purpose in clarifying the legal relations in issue; or (2) terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.  *Id.*

A sufficiently live case or controversy exists between HITT and St. Paul.  In the underlying Glenstone litigation, HITT faces $70 million dollars in potential exposure, an amount clearly triggering the question of coverage for all policies including St. Paul.  *See* ECF No. 4 ¶¶ 21, 57, 61–62.  The gravamen of this controversy, therefore, is whether St. Paul must cover the claims per the terms of the policy in the event liability is established.  That Glenstone "has not

11

obtained a judgment against [HITT] does not make the [insurance] action any less definite and concrete, nor does it vitiate the adversity of the parties' interests." *White*, 913 F.2d at 168 (discussing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also Tocci Bldg. Corp. of New Jersey, Inc. v. Virginia Sur. Co.*, 750 F. Supp. 2d 316, 323 (D. Mass. 2010) (finding concrete dispute between insured and excess insurer); *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 681 (7th Cir. 1992) (finding plaintiff insured had controversy with its excess insurer even though it had not lost yet in the underlying suit); *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992); 10B C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2757 (4th ed. 2021) (Declaratory relief may be appropriate even when "there are future contingencies that will determine whether a controversy ever actually becomes real."); *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 209 (4th Cir. 1992) (citing favorably Wright & Miller § 2757).

This is especially so where, as here, coverage under the St. Paul policy is triggered only if the underlying claims are covered by the Hartford and XL policies. Each excess policy makes clear that it incorporates all definitions, terms of coverage, exclusions and endorsements as set forth in the CCIP Policy. *See* ECF No. 22-10 at 6; ECF No. 22-11 at 22. Accordingly, once the nature and scope of coverage is ascertained for the underlying policies, that decision *will* most definitely affect whether coverage is available under St. Paul's policy. In this respect, the controversy between HITT and St. Paul is concrete, justiciable, and proper for resolution under the Declaratory Judgment Act.

Furthermore, resolving St. Paul's coverage obligations to HITT will provide clarity to the parties moving forward. Simply put, HITT will know the amount of coverage available to it if found liable in the Glenstone action. In this respect, the declaratory relief action against St. Paul

is no different than that against the other insurers on the critical question of coverage.  ECF No. 35. St. Paul's motion is therefore denied.

      For the above-stated reasons, Hartford, Pacific, and XL's motions to stay this action are GRANTED (ECF Nos. 22 & 25); St. Paul's motion to dismiss is DENIED (ECF No. 35); and CJ Miller's motion to dismiss will be HELD IN ABEYANCE (ECF No. 29).  A separate order follows.

| | |
|---|---|
| June 9, 2021 | /S/ |
| Date | Paula Xinis |
| | United States District Judge |